IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RENA K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:23CV683 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rena K. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of the Commissioner of Social Security's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Parties filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in May 2020, alleging a disability onset date of October 1, 2019. (Tr. at 17, 76, 93, 231, 238.)[2] Her applications were

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

denied initially (Tr. at 75-110) and upon reconsideration (Tr. at 111-32). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 164-66.) On July 14, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 17.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 29.) The Appeals Council denied Plaintiff's request for review on June 20, 2023, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date and therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 20.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> osteoarthritis of the bilateral knees, degenerative changes in the back, hyperlipidemia, obesity, hypertension, and obstructive sleep apnea.

(Tr. at 20.) She also identified Plaintiff's depression with anxiety as a non-severe impairment. (Tr. at 20-22.) At step three, the ALJ found that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 22-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with limitations. (Tr. at 23-28.) Specifically, the ALJ found as follows:

5

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. She is limited to frequent stooping; and occasional kneeling, crouching, crawling, and climbing of ramps and stairs. She should never climb ladders, ropes, or scaffolds. [Plaintiff] must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

(Tr. at 23.) At step four, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff remained capable of performing her past relevant work as a packer and trimmer. (Tr. at 28.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 28-29.)

Plaintiff now raises three challenges to the ALJ's decision. First, Plaintiff argues that the ALJ did not sufficiently analyze or explain the impact of Plaintiff's mild mental limitations in setting the RFC, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Pl.'s Br. [Doc. #9] at 3-8.) Second, Plaintiff contends that the ALJ erred in analyzing the severity of Plaintiff's sleep apnea by relying on Plaintiff's failure to obtain a CPAP machine that she could not afford. (Pl.'s Br. at 8-10.) Finally, Plaintiff alleges that the ALJ made no finding as to whether Plaintiff's non-prescribed cane was medically necessary. (Pl.'s Br. at 10-11.) The Court considers each of these contentions in turn, but ultimately concludes that none of these issues require remand.

    A.    Mild Mental Limitations

At step two of the sequential analysis the ALJ acknowledged medical records documenting Plaintiff's history of depression and anxiety. (Tr. at 20-21.) The ALJ considered those records and the medical opinions in deciding whether Plaintiff's mental impairments were severe impairments impacting her ability to work. As part of the analysis, the ALJ

6

Case 1:23-cv-00683-LCB-JEP   Document 14   Filed 08/28/24   Page 6 of 18

analyzed those mental impairments using a five-point scale (none, mild, moderate, marked, and extreme) to rate the degree of functional limitation in the four broad functional areas, commonly known as "paragraph B" criteria: (1) understanding, remembering and applying instructions; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Tr. at 21-22.) Ultimately, the ALJ found that Plaintiff's mental impairment was non-severe as Plaintiff had no limitation in any of the areas of mental functioning. (Tr. at 21-22.)

In making this determination, the ALJ utilized objective medical evidence, opinion evidence, and Plaintiff's own statements, first explaining that:

> Records also show that the claimant has a history of depression with anxiety, treated with medication. March 2020 notes show that the claimant was fully oriented, and behavior and mood were normal. At her November 2020 consultative examination, she indicated that her depression was stable. Examination showed that she had good eye contact, fluent speech, mood was appropriate, thought process was clear, concentration was good, and she was fully oriented. March 2021 notes show that the claimant had a positive score on behavioral health screeners, but she did not endorse concerns and declined further behavioral health supports. At her July 2021 examination, recent and remote memory was good, and she was cooperative. At her August 2021 psychological evaluation, when asked why she thought she had been referred for a psychological evaluation, she said, "I have no idea". [W]hen asked about mental health symptoms, she stated, "I got depression and I got anxiety too. I'd just rather stay home. Main because of my knee". She indicated that she was taking an herbal supplement to help alleviate "stress and anxiety", as[] she had discontinued Effexor one year prior due to lack of insurance. Upon examination, she was able to focus, and had good contact with reality. She gave appropriate eye contact, attitude was cooperative, speech was normal, mood was "alright", thoughts were adequately organized and goal-directed, thought content was normal, she was fully oriented, and memory was within normal limits. Samuel Gray, Psy.D., found that the claimant's depression and anxiety were mild, and that she was able to understand, retain, and follow instruction; sustain attention to perform simple, repetitive tasks; relate to coworkers adequately; and appeared capable of working. The opinion of Dr. Gray is persuasive, as it is supported by grossly normal mental status findings.

> Furthermore, it is consistent with the other records, which show that she did not endorse concerns and declined behavioral health supports.
>
> The State agency psychological consultants found that her depression and anxiety were non-severe, with no limitation in her ability to understand, remember, or apply information; no limitation in her ability to interact with others; no limitation in her ability to concentrate, persist, or maintain pace; and mild limitation in her ability to adapt or manage oneself. These opinions are persuasive, as they are supported by a review and summary of the medical evidence available at the time of the opinions. Furthermore, they are consistent with other grossly normal mental status findings.

(Tr. at 20-21) (internal citations to record omitted). Thus, the ALJ relied on medical opinions from Plaintiff's psychological consultative examiner, Dr. Gray, and state agency psychologists, Dr. Keith Noles and Dr. April Strobel-Nuss, as well as Plaintiff's own reports and the relevant medical records. The ALJ found these medical opinions to be persuasive and consistent with the record, and concluded that Plaintiff's mental limitations were not severe. (Tr. at 20-22.)

Plaintiff does not contest the substance of the ALJ's determination, but nevertheless contends that the medical opinions of the two state agency psychologists reflect "mild" limitations in adapting or managing oneself, and that the ALJ was therefore obligated to address these mild mental limitations in assessing the RFC. (Pl.'s Br. at 3-8.) Specifically, in undertaking the analysis of the Paragraph B criteria, state agency psychologists Dr. Noles and Dr. Strobel-Nuss both found that Plaintiff had no limitations in understanding, remembering, or applying information, no limitations in interacting with others, no limitations in concentrating, persisting or maintaining pace, and only mild limitations in adapting and managing oneself. (Tr. at 20-21.) Plaintiff argues that the ALJ found the opinions persuasive and was therefore obligated to address these mild limitations in adapting or managing oneself in the RFC.

8

The Court rejects this contention for several reasons. First, the ALJ specifically addressed Plaintiff's abilities in adapting and managing oneself and found no limitations and explained the reason for that determination. Specifically, with respect to the Paragraph B criteria, the ALJ explained:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The claimant denied any difficulty in this area. She indicated that she is able to perform personal care, prepare meals, perform household chores and laundry, drive a car, shop in stores, and perform hobbies such as reading and watching television. Furthermore, mental status examinations show that memory was good, thought process was clear, she was fully oriented, and thoughts were adequately organized and goal directed, which shows no limitation in this area.
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant denied any difficulty in this area. She indicated that she is able to go out alone, shop in stores, spend time with others, and attend church. Furthermore, mental status examinations show that she had good eye contact, she was cooperative, speech was fluent, and mood was appropriate, which shows no limitation in this area.
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has no limitation. The claimant denied any difficulty in this area. She indicated that she is able to perform personal care, prepare meals, perform household chores and laundry, drive a car, shop in stores, and perform hobbies such as reading and watching television. Furthermore, mental status examinations show that memory was good, thought process was clear, she was fully oriented, and thoughts were adequately organized and goal directed, which shows no limitation in this area.
>
> <u>The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation</u>. The claimant reported that she is able to perform personal care, prepare meals, perform household chores and laundry, drive a car, go out alone, shop in stores, spend time with others, attend church, and perform hobbies such as reading and watching television, which shows no limitation in this area.

(Tr. at 21-22) (emphasis added) (internal citations to record omitted). Thus, the ALJ explained why she found no limitations in the functional area of adapting or managing oneself, and relied

9

on Plaintiff's own reports of her functioning, including her Adult Function Report and her testimony, to conclude that Plaintiff did not have any limitations in the functional area of adapting and managing oneself. (Tr. at 21-22, 100, 276-82.) In Plaintiff's Adult Function Report, Plaintiff indicated that her ability to work is limited only by her physical impairments. (Tr. at 21-22, 281.) Plaintiff also expressed in the Adult Function Report that she could manage her personal care without reminders, manage a savings account, read and watch television, remember to go places without reminders, and follow instructions well. (Tr. at 277-82.) Similarly, at the hearing, Plaintiff testified that she was not having any issues with focusing and concentrating or completing tasks. (Tr. at 65.) Based on the record, the ALJ decided that Plaintiff's abilities showed "no limitation in" the area of adapting or managing oneself, and the ALJ explained the basis for that determination. (Tr. at 21-22.)

In addition, as set out above, the ALJ found persuasive the ultimate conclusions of Dr. Noles and Dr. Strobel-Nuss, that is, that Plaintiff did not have more than mild mental limitations and therefore her mental impairments were not severe. (Tr. at 20-21, 83, 100, 116, 127.) Like Dr. Noles and Dr. Strobel-Nuss, the ALJ similarly found that Plaintiff's

> medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe.

(Tr. at 22.) Thus, the ALJ found persuasive the ultimate determination of the state agency psychologists, and similarly concluded that Plaintiff's mental impairments did not limit her ability to perform basic work activities. Plaintiff points to the fact that the state agency psychologists found that Plaintiff had mild limitations in adapting or managing oneself. However, the ALJ was not required to adopt every sub-part of their findings, and instead the

10

ALJ specifically found that Plaintiff had no limitations in adapting or managing oneself, with the explanation set out above. Thus, the ALJ reasonably relied on the opinions of the state agency psychologists that Plaintiff's mental impairments were not severe, but the ALJ also explained her own analysis of the functional areas, supported by substantial evidence in the record.[5]

Furthermore, the ALJ considered all of Plaintiff's severe and non-severe impairments in setting the RFC and explained her reasoning. At the start of the RFC assessment, the ALJ explained that in making the RFC finding, she had

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The [ALJ] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

(Tr. at 24.) In setting the RFC, the ALJ again noted Plaintiff's daily activities and noted Plaintiff's testimony denying issues with focusing, concentrating, or completing tasks. (Tr. at 25, 65.) Based on the full evaluation of Plaintiff's mental impairments at step two, and having considered all of the symptoms in setting the RFC, including the lack of any limitations related to mental impairments, the ALJ concluded that Plaintiff could return to her prior unskilled

---

[5] Similarly with respect to the consultative psychiatric examiner Dr. Gray, Dr. Gray noted that Plaintiff "may become more easily overwhelmed by day to day stressors" but nevertheless found that Plaintiff had only "mild symptoms of depression and anxiety" primarily stemming from her physical impairments, and that the symptoms "appear to have had only a minor impact on her personal, occupational, and social functioning." (Tr. at 987.) Dr. Gray then concluded that "[f]rom a psychological perspective, [Plaintiff] appears capable of working at this time." (Tr. at 988.) The ALJ found persuasive Dr. Gray's conclusion that Plaintiff's mental impairments were no more than mild and that she was capable of working. (Tr. at 20.) The ALJ noted that this was consistent with Dr. Gray's normal mental status findings as well as the other medical records, which reflect that Plaintiff was not raising any mental health concerns and declined behavioral health supports. (Tr. at 20, 653, 654, 655.) Thus, as with the State Agency Psychologists, the ALJ considered Dr. Gray's opinion and explained the basis for finding the ultimate conclusions persuasive.

11

work. Plaintiff points to no evidence suggesting a need for greater—or any—limitations as a result of her non-severe mental impairments.

Plaintiff nevertheless cites to the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), to argue that the ALJ was obligated to include Plaintiff's mild mental limitations in setting the RFC. In Mascio, the Fourth Circuit held that if moderate limitations in one of the four functional areas of mental functioning, such as concentration, persistence, or pace ("CPP"), are reflected at step two, the ALJ should either address those limitations in assessing the RFC or explain why the limitations do not affect the claimant's ability to work. Mascio, 780 F.3d at 637-38. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in [CPP] at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the [CPP] limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

However, unlike in Mascio, where the ALJ found moderate limitations in mental functioning, the ALJ in the present case found no limitation in any area of mental functioning. (Tr. at 21-22.) Thus, Mascio is inapplicable. In addition, as noted above, the ALJ made these findings during her discussion at step two of the sequential analysis, supporting her conclusion that because Plaintiff's mental impairment "does not otherwise indicate that there is more than a minimal limitation in the [Plaintiff's] ability to perform basic mental work activities, it is non-severe." (Tr. at 22.) Thus, unlike in Mascio, the ALJ specifically found that there were no more than minimal limitations as a result of Plaintiff's mental impairments. Furthermore, Mascio involved moderate limitations in a functional area, but Plaintiff here points to only the

possibility of <u>mild</u> mental limitations in adapting and managing oneself, and other cases in this District have noted that "the weight of post-<u>Mascio</u> authority among the district courts in the Fourth Circuit does not favor extending <u>Mascio</u> to <u>mild</u> [functional] limitation[s]." <u>Spradley v. Saul</u>, No. 1:20CV337, 2021 WL 1739013, at *7 (M.D.N.C. May 3, 2021) (collecting cases); <u>see also</u> <u>Pickett v. Kijakazi</u>, No. 1:21CV500, 2022 WL 3908862, at *4 (M.D.N.C. Aug. 30, 2022); <u>Baucom v. Saul</u>, 1:18CV819, 2020 WL 978256, at *10 (M.D.N.C. Feb. 28, 2020); <u>Younger v. Berryhill</u>, No. 2:18-cv-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019).

Moreover, even if <u>Mascio</u> applied here, <u>Mascio</u> itself requires only a sufficient explanation regarding the limitations in the RFC, and here the ALJ sufficiently explained the basis for the determination. As set out at length above, the ALJ discussed Plaintiff's mental impairments and their impact on her ability to adapt and mange herself. Most strikingly, the ALJ recounted Plaintiff's own statements indicating that her mental impairments did not impact her ability to perform basic work activities and outlining her many abilities within her daily life. While the ALJ concluded that Plaintiff has no limitation in any of the areas of mental functioning, she also reasoned that Plaintiff's mental impairments cause "no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." (Tr. at 22.) Plaintiff does not challenge the substance of that determination, and the ALJ set out the basis for that conclusion from the record. This discussion provides "an accurate and logical bridge" explaining the omission of any specific mental limitations from the RFC. <u>Cf.</u> <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121-22 (4th Cir. 2020) (quoting <u>Brown v. Comm'r Soc. Sec. Admin.</u>, 873

13

F.3d 251, 269 (4th Cir. 2017)). Substantial evidence supports the ALJ's omission of mental limitations from Plaintiff's RFC assessment, and Plaintiff's Mascio challenge is without merit.

B.  CPAP Machine

Plaintiff next contends that the ALJ "erred in finding that [Plaintiff's] sleep apnea caused no significant limitations based on a lack of treatment she could not afford." (Pl.'s Br. at 9.) As courts in this District have noted,

> "[a] claimant may not be penalized for failing to seek treatment [ ]he cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Lovejoy[ v. Heckler], 790 F.2d at 1117 (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). Social Security Ruling 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") provides that:
>
>> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example:
>>
>> . . .
>>
>> * The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>
> SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added). However, even if a claimant cannot afford medical treatment, he must "show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." Gordon, 725 F.2d at 237.

Kirkland v. Colvin, No. 1:15CV00086, 2016 WL 126754, at *7 (M.D.N.C. Jan. 11, 2016).

Plaintiff argues that the ALJ erroneously discounted her symptoms by using Plaintiff's inability to afford a CPAP machine as evidence that her symptoms were not as limiting as she

alleged, "despite significant evidence" of her inability to afford the treatment. (Pl.'s Br. at 8-10.) However, the decision in this case reflects that the ALJ found Plaintiff's sleep apnea to be a severe impairment and acknowledged Plaintiff's inability to afford the CPAP machine. (Tr. at 25, 27, 28.) The ALJ also noted that Plaintiff did not obtain the CPAP machine during the time that she had insurance in 2019, due to transportation issues. (Tr. at 27, 422, 374, 368). The ALJ also noted that Plaintiff's provider discussed resources for obtaining a reduced cost CPAP machine, with a referral to social services. (Tr. at 27, 364, 375.) Thus, the ALJ did note Plaintiff's possible options for obtaining the CPAP machine despite her lack of funds, which Plaintiff failed to pursue.

Even more importantly, the ALJ ultimately concluded that even without the CPAP machine, Plaintiff's symptoms were not as limiting as alleged, based on her daily activities. Specifically, the ALJ noted that even without the benefit of a CPAP machine, Plaintiff

> reported that she is able to perform personal care, prepare meals, perform household chores and laundry, drive a car, go out alone, shop in stores, spend time with others, attend church, and perform hobbies such as reading and watching television, which does not suggest that her symptoms are as limiting as [Plaintiff] has alleged in connection with this application.

(Tr. at 28.) The ALJ also noted the opinion evidence from Plaintiff's November 2020 consultative examiner, Zachary Seitz, PA-C, who was aware that Plaintiff was not using a CPAP machine but still concluded "[i]n regards to the history of sleep apnea, based on the current physical exam for this, there is not enough evidence to state a functional limitation." (Tr. at 27, 651.) Mr. Seitz further concluded that Plaintiff could work an 8-hour workday with normal breaks. (Tr. at 27, 651.) The ALJ found Mr. Seitz's overall medical opinion to be persuasive and consistent with the remainder of the evidence. (Tr. at 27.) Plaintiff has not

15

pointed to any medical opinions or records that would require additional limitations in connection with sleep apnea. Thus, the ALJ sufficiently explained the analysis, considered all of Plaintiff's symptoms even without the CPAP machine, and made a determination that is supported by substantial evidence.

C.   Cane Usage

Finally, Plaintiff argues that the RFC failed to account for Plaintiff's use of a non-prescribed cane and that the ALJ failed to determine whether Plaintiff's cane was "medically necessary." (Pl.'s Br. at 10.) "The requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4) (2020). Accordingly, an ALJ must consider the impact of a medically required hand-held assistive device on a claimant's RFC. See McLaughlin v. Colvin, No. 1:12-CV-621, 2014 WL 12573323, at *2 (M.D.N.C. July 25, 2014); Social Security Ruling 96-9p, Titles II and XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Social Security Ruling 96-9p explains the impact of an assistive device on an RFC for sedentary work, and courts within this circuit have applied this ruling to the light occupational base as well. See, e.g., Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013). SSR 96-9p provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations;

16

distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

1996 WL 374185, at *7.

Here, the ALJ reviewed Plaintiff's testimony in which she stated she has trouble walking and "uses a non-prescribed cane at all times." (Tr. at 24-25.) However, the ALJ also noted that Plaintiff

> is able to perform personal care, prepare meals, perform household chores and laundry, drive a car, go out alone, shop in stores, spend time with others, attend church, and perform hobbies such as reading and watching television.

(Tr. at 25) (citing Tr. at 276-83). Most importantly, the ALJ also set out in detail the results of two consultative examinations which established the opposite of Plaintiff's allegations – that Plaintiff did not require the use of a handheld assistive device such as a cane. (Tr. at 27-28, 648, 974). Specifically, the ALJ noted that at the November 2020 consultative examination:

> Upon examination, <u>she used an assistive device, but was able to walk around the room without it.</u> Gait was steady and symmetric. She had no palpable muscle spasms and muscle strength was normal. Sensory examination was normal and straight leg raising was negative bilaterally. She had no joint swelling, erythema, effusion, tenderness or deformity, other than mild tenderness to palpation at the medial joint line of the left knee. Anterior and posterior drawer tests were negative. She was able to lift, carry, handle, and manipulate light objects, squat and rise, rise from a sitting position without assistance, and had no difficulty getting down from the examination table. She was able to walk on heels and toes, tandem walk, and stand on one foot bilaterally.

(Tr. at 26) (emphasis added). Based on this evaluation, the ALJ noted that the consultative examiner, Zachary Seitz, PA-C, concluded that Plaintiff "<u>did not need an assistive device with regards to short and long distances and uneven terrain</u>." (Tr. at 27) (emphasis added). The

17

ALJ found this opinion persuasive and supported by the examination findings and consistent with the overall evidence. Similarly, the ALJ noted that at Plaintiff's July 2021 consultative examination, Stephen Burgess M.D. found that "[s]he <u>did not require the use of an assistive device</u> and had a normal stance and appeared stable at station." (Tr. at 26, 974) (emphasis added). The ALJ likewise found the opinion of Dr. Burgess persuasive. (Tr. at 27.)

Thus, the ALJ's decision sufficiently sets out the ALJ's reasoning, based on Plaintiff's reported activities and the opinions of two consultative examiners, both of whom concluded that Plaintiff did not need an assistive device. The ALJ found these determinations persuasive, and substantial evidence supports the ALJ's omission of Plaintiff's non-prescribed cane use from the RFC.

IV. <u>CONCLUSION</u>

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the pleadings [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 28th day of August, 2024.

Joi Elizabeth Peake<br>
United States Magistrate Judge